# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEROME HARRIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 11 C 1759 |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Jerome Harris' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Harris' Section 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## FACTUAL BACKGROUND

On November 9, 2006, a federal grand jury returned a two-count indictment against Harris charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count One) and possession with the intent to distribute a mixture containing cocaine base in the form of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Two). On July 17, 2007, the Court granted the government's motion to amend the indictment to correct a non-substantive error concerning the serial number for one of the firearms charged to have been in Harris' possession.

Harris' jury trial began on August 7, 2007 and ended on August 8, 2007. At trial, Chicago Police Officers Zach Rubald, Scott Leck, and Sergeant Eric Olson, who were on patrol

in the Englewood neighborhood of Chicago, testified that a concerned citizen approached them about a man who was selling drugs in a nearby alley. After receiving this tip, the officers, who were dressed in uniform, drove in an unmarked police car to the south alley of the 900 block of West 59th Street. Once they arrived at the alley, the officers observed Harris throw a clear, plastic sandwich bag on the ground. Thereafter, Harris attempted to walk away. The officers picked up the bag and inspected it. The bag contained twelve individual plastic bags each containing a white, rock-like substance. The police officers then arrested Harris, read him his *Miranda* warnings, and searched him.

Subsequently, the police officers interviewed Harris, who was on parole at that time. Harris told them that he knew of an apartment on West 59th Street where firearms and drugs were stored. The police officers drove to the address, searched for the gun, and found an inoperable .32 caliber revolver. Harris also informed Officer Leck that he had stored two firearms at his girlfriend Porsche Andrews' house on South Woodlawn Avenue in Chicago. The police officers then drove to his girlfriend's address and asked Regina Walker, the lease holder and Andrews' grandmother, for consent to search the property. After Walker gave her written consent, the police officers searched the home. At first the police could not find the firearms, so Officer Leck entered the residence with Harris who helped him locate a .40 caliber semi-automatic handgun and a loaded .45 caliber pistol in the residence.

In addition to the arresting officers' testimony, the government called Regina Walker at trial. She testified that the guns found in her home did not belong to her or anyone else in her household. Andrews testified at trial that the guns found in her room did not belong to her and that Harris had been in her room on the morning of his arrest and told her he had left something

2

in her room. Andrews further testified that she had been dating Harris for the two years leading up to his arrest and that he was a drug dealer. She also testified that on at least five occasions she personally observed Harris receive money from multiple individuals in exchange for plastic bags containing a lumpy, off-white form of cocaine. Andrews stated that Harris would give her significant sums of cash – from $100 to $400 – whenever she asked for it. Further, Andrews testified that Harris made statements about his gun possession and that he "would brag about what he would do to people and the weapons he had ... [and] how he'd kill somebody or how he'd shoot them."

At trial, Sergeant Olson testified about certain post-arrest statements Harris made regarding his gun possession:

> A: I asked Mr. Harris if – I conducted a general questioning regarding gang and drug activity and asked Mr. Harris if – he could provide any information.
>
> Q: Did he agree to do that?
>
> A: Yes, he did.
>
> Q: What did he tell you?
>
> A: He initially directed us to a location at West 59th Street on the Second Floor, where he related there were a couple of guns up in the bedroom of the apartment.... In talking to Mr. Harris in the station, I asked Mr. Harris, again, about gang information in the Englewood community.
>
> Q: And what did he say?
>
> A: Mr. Harris related to me, in essence, that he was having a dispute with a group of individuals from approximately 59th and Sangamon, I believe it was; that that was why he had the firearms; but, he moved them out of the Englewood community because, as he quoted, it was too hot and there were too many police out there.

3

(06 CR 0828, R. 103, Tr. at 166-67.)

At trial, the government also called Robert Coleman, a lieutenant with the Will County Sheriff's Police, who testified as an expert in narcotics trafficking. Coleman specifically testified that the drug inside the plastic bag that Harris had dropped in the alley was crack cocaine in twelve dime bags. Further, the parties stipulated that Harris had been convicted of a felony prior to his arrest on April 2, 2006.

On August 8, 2007, the jury found Harris guilty on both counts of the indictment. On December 6, 2007, the Court sentenced Harris to 120 months imprisonment on Count One and 210 months imprisonment on Count Two to run concurrently.

Harris appealed his conviction to the United States Court of Appeals for the Seventh Circuit arguing that the Court erred in admitting (1) Andrews' testimony about Harris' prior drug transactions; (2) Andrews' admissions about his gun possession; and (3) his post-arrest statement made to the arresting officers. On November 25, 2009, the Seventh Circuit affirmed Harris' conviction. *See United States v. Harris,* 587 F.3d 861 (7th Cir. 2009).

## LEGAL STANDARD

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A Section 2255 motion is not a

substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted). As such, if a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *See Sandoval v. United States*, 574 F.3d 847, 850-51 (7th Cir. 2009); *Torzala,* 545 F.3d at 522. Because claims of ineffective assistance of counsel usually involve evidence outside of the trial record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011).

## ANALYSIS

Construing Harris' pro se Section 2255 motion liberally, *McGee v. Bartow,* 593 F.3d 556, 566-67 (7th Cir. 2010), he brings Sixth Amendment ineffective assistance of trial counsel claims based on counsel's failure to (1) investigate and call Anthony Price as an alibi witness; (2) investigate and call Eric Seals as an alibi witness; (3) call Demecca Walker as a defense witness; (4) call Harris as a witness in his own trial; (5) obtain exculpatory and impeachment evidence; (6) request a competency evaluation for Harris; (7) request a jury instruction for a lesser included offense; (8) rebut Federal Rule of Evidence 404(b) evidence with impeachment evidence; (9) investigate the backgrounds of certain law enforcement officers; and (10) challenge certain evidence. Harris also maintains that the government withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Last, Harris brings

5

an ineffective assistance of appellate counsel claim based on appellate counsel's failure to argue on appeal that the government withheld exculpatory evidence in violation of *Brady*.

I.   **Ineffective Assistance of Trial Counsel**

First, Harris argues that his trial counsel failed to provide effective assistance of counsel under the Sixth Amendment. To establish constitutionally ineffective assistance of counsel, Harris must show that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Harris fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ...."); *see also United States v. Taylor,* 569 F.3d 742, 748 (7th Cir. 2009) ("Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance.").

   A.   **Potential Defense Witnesses**

Harris first argues that his trial attorney, Gerald Collins, was constitutionally ineffective for failing to interview and call Anthony Price and Eric Seals as alibi witnesses. Harris specifically maintains that Price and Seals were eyewitnesses to his arrest that took place at a hot dog stand at 901 W. 59th Street in Chicago. Harris contends that these two eyewitnesses would have testified that the arresting officers assaulted him when they arrested him and that he did not resist arrest.

Counsel's decision not to call Price or Seals as witnesses was sound trial strategy because

their accounts of Harris' arrest are contradicted by undisputed evidence in the record. *See Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) ("A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance"). To clarify, there is undisputed trial testimony that Harris was arrested in the south alley of the 900 block of West 59th Street and not in front of a hot dog stand. Moreover, whether the police officers used excessive force and Harris resisted arrest was not at issue in his criminal trial. In short, the strength of Price's and Seals' alibi testimony is negligible compared to the evidence contradicting their statements. Therefore, Harris has failed to establish the *Strickland* performance prong under these circumstances. *See McAfee v. Thurmer,* 589 F.3d 353, 356 (7th Cir. 2009) ("Strategic choices are 'virtually unchallengeable.'") (quoting *Strickland,* 466 U.S. at 690); *see also United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990) ("The Constitution does not oblige counsel to present each and every witness that is suggested to him."). Because Harris must satisfy both *Strickland* prongs to prevail, the Court need not determine whether trial counsel's performance prejudiced Harris. *See Welch v. United States*, 604 F.3d 408, 425 (7th Cir. 2010).

Next, Harris argues that his trial counsel's failure to call Demecca Walker, who is Porsche Andrews' sister, as a trial witness constitutes ineffective assistance of counsel. A private investigator and the government both interviewed Demecca Walker in connection with Harris' case. These interviews do not reveal any exculpatory or impeachment evidence, but instead show that Walker refuted Harris' statements that she was his girlfriend. Walker also indicated that Harris had been in possession of firearms. Again, Harris' counsel was not

7

constitutionally ineffective for failing to call Walker as a trial witness because it was sound trial strategy not to do so based on her potential testimony that was inconsistent with Harris' version of the facts. *See McAfee,* 589 F.3d at 356. Because Harris has failed to overcome the presumption that counsel's decision not to call Walker was sound trial strategy, he has failed to fulfill the *Strickland* performance prong as to this claim. *See Sussman v. Jenkins,* 636 F.3d 329, 350 (7th Cir. 2011).

> **B.    Harris as Trial Witness**

In addition, Harris argues that his trial counsel was constitutionally ineffective for failing to call him as a witness at his own criminal trial. Harris, however, concedes that his attorney discussed with him his right to take the stand at trial. (R. 1, 2255 Mot., at 11.) In particular, Harris states:

> The advice Mr. Collins gave me about taking the stand was that I would be "crushed" on cross examination. I told Mr. Collins all what I've told him is true, to which he told me the jury would not believe me over the police and hold my testimony against [me]. He told me I could testify if I wanted to since it was my right but he highly recommend[ed] against it." (*Id*.)

Counsel's advice to Harris was sound trial strategy in light of the fact that Harris had a number of convictions which would have been admissible impeachment evidence and the government could have also impeached him with his own post-arrest admissions made to law enforcement. *See United States v. Taylor,* 128 F.3d 1105, 1108-09 (7th Cir. 1997) (fact that attorney did not want defendant to testify does not constitute constitutional violation).

In fact, Harris made a voluntary and knowing choice not to testify on his own behalf at trial. *See Starkweather v. Smith,* 574 F.3d 399, 403 (7th Cir. 2009) ("waiver of a defendant's Sixth Amendment rights must be made voluntarily, knowingly and intelligently"). Specifically,

8

Harris stated on the record that he did not want to testify on his own behalf after the Court explained to Harris his rights to testify in open court. Specifically, on August 8, 2007, Harris stated the following:

> **The Court:** You also have a right, Mr. Harris, if you want to do so, to testify. Do you understand that?
>
> **Harris:** Yes, ma'am.
>
> **The Court:** So, in other words, nothing stops you from testifying, if you wish to do so. Do you understand that, sir?
>
> **Harris:** Yes, ma'am.
>
> **The Court:** Have you discussed this with Mr. Collins, your attorney?
>
> **Harris**: Yes, ma'am.
>
> **The Court:** Do you have any questions for the Court about your rights regarding testifying, sir?
>
> **Harris**: No, ma'am.
>
> **The Court**: Knowing that you have the right to testify, if you want to; and, you have the absolute right not to testify, what is your decision, sir, with respect to testifying in this trial?
>
> **Harris:** I chose not to testify.

(06 CR 0828, R. 103, Tr. at 237-38.) Because Harris knowingly and intelligently decided not to testify, this ineffective assistance of counsel claim fails.

### C. Failure to Obtain Exculpatory and Impeachment Evidence

Next, Harris argues that trial counsel was ineffective because he failed to obtain evidence that Harris was arrested at a hotdog stand with two other individuals and not in the south alley of the 900 block of West 59th Street. In particular, Harris maintains that his attorney should have obtained internal police records to find this evidence. Harris' arrest report, however, reveals that

he was arrested in the south alley of 911 West 59th Street and not in front of a hotdog stand. (R. 13-1, Ex. 3, Arrest Report.) Therefore, counsel was not constitutionally ineffective for failing to present information concerning his client being arrested at a hotdog stand to the jury because the facts in the record do not support this assertion. Harris' argument that trial counsel was ineffective for failing to contact the employees of the hotdog stand similarly fails.

Harris also argues that internal police records would have revealed that the police ran a search of his criminal history around the same time that the police ran a search of two other individuals' criminal history records, presumably, in support of the inference that the police arrested Harris and two other individuals at the same time. Counsel's failure to introduce any such evidence did not prejudice Harris based on the overwhelming amount of evidence in the record, including Harris' post-arrest statements, that the police arrested him alone in the south alley of 911 West 59th Street. In short, Harris has failed to show that there is a reasonable probability that but for his counsel's mistake of not obtaining this evidence and presenting it at trial, the result of his trial would have been different. *See United States v. Jones,* 635 F.3d 909, 915 (7th Cir. 2011). Because Harris has failed to show prejudice under the second *Strickland* prong, the Court need not discuss whether counsel's performance was deficient. *See Welch,* 604 F.3d at 425.

      D.      **Failure to Request a Competency Evaluation**

Harris further asserts that his trial counsel was ineffective for failing to request a competency evaluation. In particular, Harris maintains that he suffered a head injury during his pre-trial detention and that this injury affected his memory. "To be competent to stand trial, a defendant must have 'sufficient present ability to consult with his lawyer with a reasonable

10

degree of rational understanding [and] a rational as well as factual understanding of the proceedings against him." *United States v. Ewing,* 494 F.3d 607, 622 (7th Cir. 2007) (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). In the context of an ineffective assistance of counsel claim, "[w]here a defendant argues that he should have received a fitness hearing, we have interpreted the prejudice inquiry as asking whether there is a reasonable probability the defendant would have been found unfit had a hearing been held." *Burt v. Uchtman,* 422 F.3d 557, 567 (7th Cir. 2005).

As discussed above, Harris knowingly, voluntarily, and intelligently waived his right to testify on his own behalf during a colloquy with the Court which reflected that he understood the nature of the proceeding against him and its consequences. Further, Harris' Section 2255 motion itself reflects his understanding of this matter, along with his interactions with his trial counsel. Harris asked his trial counsel, for example, about testifying on his own behalf after which counsel advised him against doing so. According to Harris, his attorney told him he could testify if he wanted to because it was his right, but that counsel highly recommended against it. Under these circumstances, Harris cannot establish the *Strickland* prejudice prong for this claim, namely, that there is a reasonable probability the Court would have found him unfit to stand trial if the Court had conducted a fitness hearing. *See Burt,* 422 F.3d at 567; *see also Eddmonds v. Peters,* 93 F.3d 1307, 1316-17 (7th Cir. 1996). As such, this ineffective assistance of trial counsel claim fails.

### E. Jury Instruction for Lesser Included Offense

Furthermore, Harris contends that his trial counsel provided ineffective assistance of counsel because he failed to request a jury instruction for the lesser included offense of

11

possession of cocaine base. Harris, however, was not entitled to a lesser included offense jury instruction, and thus his ineffective assistance of counsel claim fails. More specifically, Harris was charged with possession with the intent to distribute a mixture containing cocaine base in the form of crack cocaine in violation of 21 U.S.C. § 841(a)(1), and simple possession of cocaine base is not a lesser included offense of this charge. *See United States v. Upton,* 512 F.3d 394, 402 (7th Cir. 2008) ("simple possession of cocaine base is not a lesser-included offense for possessing a controlled substance with an intent to distribute"). In addition, Harris presented an exculpatory defense to this charge denying that he had possession of crack cocaine with the intent to distribute. Because he presented an exculpatory defense, he was not entitled to a lesser included offense instruction. *See United States v. Hill,* 196 F.3d 806, 808-09 (7th Cir. 1999). The Court thus denies this ineffective assistance of counsel.

### F. Failure to Rebut Rule 404(b) Evidence

Next, Harris asserts that his trial counsel was ineffective for failing to rebut certain Federal Rule of Evidence 404(b) evidence. Specifically, Harris argues that counsel failed to impeach Porsche Andrews' testimony with Demecca Walker's potential testimony. As discussed above, Walker's potential testimony conflicted with Harris' version of the facts. Also, impeachment evidence consists of instances of an individual's character, conduct, prior convictions, or the witness' prior inconsistent statements. *See* Fed.R.Evid. 608, 609, 613. As such, Demecca Walker's potential testimony is not impeachment evidence in the first instance. Therefore, this argument is without merit.

### G. Failure to Investigate Background of Law Enforcement Officers

Harris also contends that his trial counsel provided ineffective assistance of counsel for

failing to investigate Sergeant Olsen's and Officer Rubald's backgrounds. In particular, Harris alleges that he told his trial counsel about civil lawsuits involving Sergeant Olsen and Officer Rubald, a well as three sustained internal complaints against these officers. In response, Harris maintains that his attorney told him that these other cases and sustained complaints did not help his case and that the Court would never allow this evidence into evidence. Indeed, the Court granted the government's motion to exclude this background evidence. Based on counsel's advice, counsel's performance did not fall below an objective standard of reasonableness under *Strickland* because – as counsel predicted – the Court barred admission of any such evidence at trial. *See Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011) ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms"). As such, this claim is without merit.

        H.        **Failure to Challenge Certain Evidence**

Harris' last ineffective assistance of trial counsel claim is that his counsel was ineffective for failing to challenge his statements to the police officers that he used the guns at issue in this lawsuit on the New Year's Eve prior to his April 2006 arrest. According to Harris, he was in jail on that New Year's Eve, and thus the officers' testimony that Harris said he used these guns on New Year's Eve lacks credibility. Even assuming that Harris was incarcerated on New Year's Eve and did not shoot his guns at that time, Porsche Andrews' testimony corroborated Harris' post-arrest statement that he was in possession of the guns on the day of his April 2006 arrest. Therefore, Harris cannot establish that counsel's failure to rebut this evidence affected the outcome of his case. *See McAfee,* 589 F.3d at 354-55. Accordingly, this last ineffective assistance of trial counsel claim lacks merit.

## II. Brady Claim

Next, Harris argues that the government withheld evidence that he was arrested at a hotdog stand and that the police searched his criminal history at the same time as they searched Anthony Price's criminal history. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). First, at trial, the parties did not contest the fact that the police arrested Harris in the south alley of 901 West 59th Street or that the police arrested Harris by himself. Second, the government complied with its discovery obligations under Federal Rule of Criminal Procedure 16(a), by producing Harris' arrest report indicating that he was arrested in the south alley of 901 West 59th Street and was alone, along with other documents. (R. 13-1, Ex. 3, Arrest Report, Exs. 4-5.) As such, there is no factual basis for Harris' *Brady* claim. Also, Harris never explains why being arrested at the hotdog stand with two other individuals is materially favorable to him. *See Mosley v. City of Chicago,* 614 F.3d 391, 397 (7th Cir. 2010) ("*Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused"). Furthermore, the location of Harris' arrest was well-known to him, thus he could not have suffered any prejudice from the government's alleged failure to disclose this information. Accordingly, Harris' alleged *Brady* claim fails.

## III. Ineffective Assistance of Appellate Counsel

Finally, Harris argues that his appellate counsel provided constitutionally ineffective assistance of counsel for failing to argue on appeal that the government withheld exculpatory evidence. As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *See Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). Under the *Strickland* performance prong, an appellate

counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *See id.*; *see also Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010). To establish the *Strickland* prejudice prong, Harris must show that "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan,* 598 F.3d 416, 425 (7th Cir. 2010); *see also Suggs,* 513 F.3d at 678.

As discussed directly above, Harris' *Brady* claim has no factual basis and it is well-established that appellate attorneys do not have to present losing arguments on appeal to provide constitutionally effective assistance of counsel. *See Whitehead v. Cowan,* 263 F.3d 708, 731 (7th Cir. 2001) ("[a]ppellate lawyers are clearly not incompetent when they refuse to follow a 'kitchen sink' approach to the issues on appeals.") (citation omitted); *see also Martin v. Evans,* 384 F.3d 848, 852 (7th Cir. 2004) ("counsel is not required to raise every non-frivolous issue on appeal"). Moreover, as the Supreme Court teaches, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Accordingly, appellate counsel was not constitutionally ineffective for failing to raise Harris' alleged *Brady* claim on appeal because it had no merit. The Court thus denies Harris' ineffective assistance of appellate counsel claim.

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant

Harris a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have an absolute right to appeal a district court's denial of a Section 2255 motion; instead, he must first request a certificate of appealability ("COA"). *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *see also* 28 U.S.C. § 2253(b). Harris is entitled to a COA only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). Under this standard, Harris must demonstrate that reasonable jurists would find the Court's assessment of his Section 2255 claims debatable or wrong. *See Miller-El,* 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Here, the Court can find no reason why reasonable jurists would debate or disagree with the Court's rulings that Harris' trial counsel and appellate counsel provided effective assistance of counsel. In addition, because there is no factual basis for Harris' alleged *Brady* claim, jurists of reason would not find it debatable that Harris' *Brady* claim is without merit. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Harris' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Further, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** July 20, 2011

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**

16